IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIKE WELLS, individually and on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>CJ LOGISTICS AMERICA, LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:23-CV-15191<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Mike Wells ("**Plaintiff**"), by his undersigned attorneys, on his own behalf and on behalf of all others similarly situated, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, brings this First Amended Class Action Complaint against CJ Logistics America, LLC ("**Defendant**") for its violations of Plaintiff's privacy rights guaranteed under the Illinois Genetic Information Privacy Act, 410 Illinois Compiled Statute ("**ILCS**") 513 *et seq.* (hereinafter "**GIPA**"), and allege as follows:

## NATURE OF THE ACTION

1. Unlocking the human genetic code came with it the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For the first time, women can now learn whether they are predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

2. However, all of this information can only be obtained if people are willing to allow sharing of genetic information, and that is only possible if people know that their genetic

information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

3. The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

4. Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used by employers to discriminate against them.

5. Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

6. To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

7. Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

8. Defendant chose to repeatedly disregard Illinois' genetic privacy laws by asking its employees to provide genetic information in the form of family medical history to assist the company in making employment decisions.

9. Accordingly, Plaintiff seeks on behalf of himself, and all of Defendant's other similarly situated employees in the state, an order: (i) requiring Defendant to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiff and the members of the proposed Class.

## PARTIES

10. Plaintiff Mike Wells is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Mr. Wells currently resides in Chicago, Illinois.

11. Defendant CJ LOGISTICS AMERICA, LLC is a Delaware corporation headquartered in Des Plaines, Illinois. The company provides integrated and multimodal logistics and supply chain services. Defendant is a major employer in the state of Illinois with hundreds of employees across numerous facilities operated throughout the state, including 300 Central Avenue, University Park, IL, 60484 (the "**University Park Facility**") and 1750 S. Wolf Road, Des Plaines, Il 60018 (the "**Des Plaines Facility**").

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

13. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

14. This Court has jurisdiction over the Defendant because it conducts business in this District, and a substantial part of the unlawful events and practices which give rise to this action occurred in this District.

15. This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in Illinois and purposefully avail themselves of the markets within Illinois through the manufacture, processing and distribution of their products, and hiring of employees, thus rendering jurisdiction by this Court proper and necessary.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district and because Defendant has conducted the unlawful practices at issue in this action within this judicial district and has done business within this judicial district. Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")

17. During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.]"[1]

18. However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian

---

[1] *Scientists Complete Rough Draft of Human Genome* (N.Y. Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23.

4

science fiction movie *Gattaca*, attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e., genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information.[2]

19. Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to protect an individual from their genetic information (such as family medical history) being used against them in a discriminatory manner. Limiting the use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

20. The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 110 P.L. 233; *see also* 42 U.S.C. § 2000ff. The 2008 amendments to GIPA sought to further prohibit discriminatory practices of employers through the use of genetic information of employees, including such employees' family medical history.

21. During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the importance of safeguarding family medical history due to the fact that it is akin to knowledge of genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in '96 or '97, I had a third generation ovarian cancer survivor that came

---

[2] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15, 2022) available at https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html.

>to me with this issue. … If a woman has … the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life … it's important that we help people be able to know that information and know they won't be discriminated against in their employment …. Quite honestly, with genetic information we have today, we could identify a pool of people that … no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

22. To accomplish the Illinois Legislature's goal of ensuring that genetic information is not used to discriminate against employees, GIPA adopted Congress' definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103.

23. GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer … shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, … as a condition of employment, preemployment application…;
>
> (2) affect the terms, conditions, or privileges of employment, preemployment application, … or terminate the employment, … of any person because of genetic testing or genetic information with respect to the employee or family member…;
>
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, …; and

> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c). Nor may an employer or prospective employer enter into an agreement with a person to take a genetic test. 410 ILCS 513/25(d).

24. Even if an employer otherwise obtains genetic information lawfully, it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j).

25. In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action … against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful violation; (b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the … court may deem appropriate." *Id.*

26. Plaintiff is not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the injuries caused by Defendant. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act ("**BIPA**")] in order to qualify as an 'aggrieved person' under BIPA); *see also Bridges v. Blackstone Grp., Inc.*, 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA).

27. Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

## PLAINTIFF SPECIFIC ALLEGATIONS

### PLAINTIFF MIKE WELLS

28. Plaintiff submitted an application to Defendant for the position of Forklift Operator at the University Park Facility in or around January 2021.

29. On or around January 15, 2021, during the application and hiring process, Defendant directly or indirectly solicited, requested, or required Mr. Wells to disclose his genetic information in the form of diseases and conditions that had manifested in his family members as a condition of employment.

30. Specifically, on or around January 15, 2021, an individual named Craig Bolton, who upon information and belief was an employee of Defendant, directly solicited, requested, or required Mr. Wells to disclose his family medical history during an interview. As part of the hiring process, Mr. Wells was required to meet with Mr. Bolton at the University Park Facility for the interview. During the interview, Defendant's employee verbally asked Mr. Wells questions about his family medical history, including whether medical conditions with genetic predispositions has manifested in her parents, including cardiac health, cancer, and diabetes, among other ailments. When asking these questions, Defendant's employee had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

31. In response, Mr. Wells disclosed genetic information, including conditions that his family members had been diagnosed with. Mr. Wells would not have volunteered his family members' medical histories if Defendant's employee had not asked Mr. Wells to do so.

8

32. This interview was a condition of employment and/or preemployment application because Defendant required Mr. Wells to attend this interview in order to be hired.

33. Also, in or around January 2021, Mr. Wells was required to submit to a pre-employment physical as a requirement of the hiring process. The physical was conducted by a third-party medical provider, Concentra. During the physical, the provider verbally requested Mr. Wells to disclose his family medical history, including whether medical conditions with genetic predispositions has manifested in his parents, including cardiac health, cancer, and diabetes, among other ailments.

34. During the physical, the provider gave Mr. Wells a written questionnaire and requested Mr. Wells to provide responses to the questions therein. The questionnaire asked Mr. Wells to disclose whether various diseases or disorders with a genetic predisposition had manifested in his family members, including whether Mr. Wells's parents had a history of cardiac health, cancer, and diabetes, among other ailments.

35. After completing the paperwork, Mr. Wells met with the provider one-on-one in a physical examination room within the provider's medical offices. During this examination, the provider tested Mr. Wells's eyesight and the flexibility of various body parts. After completing the physical portions of the examination, the provider verbally asked Mr. Wells questions about his medical conditions and history. When asking these questions, the provider had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

36. Among other questions, the provider verbally asked Mr. Wells to provide his family medical history. The provider listed various medical conditions and asked Mr. Wells to respond by stating whether Mr. Wells had any of those conditions, or whether any family members on Mr.

9

Wells's maternal or paternal bloodlines had these conditions. These medical conditions included cardiac health, cancer, and diabetes, among other ailments.

37. In response, Mr. Wells disclosed genetic information, including his family members' medical histories. Mr. Wells would not have volunteered his genetic information if the provider had not asked Mr. Wells to do so.

38. Mr. Wells was not directed by the provider or Defendant, either verbally or in writing, to not disclose the solicited genetic information. Nor did Mr. Wells provide prior, knowing, voluntary, and written authorization to Defendant for the use of his genetic information in furtherance of a workplace wellness program.

39. The physical was a condition of employment and/or preemployment application because Defendant required Mr. Wells to attend this physical in order to be hired.

40. Mr. Wells was required to disclose his genetic information at the interview and the physical as a condition of employment with Defendant.

41. Mr. Wells's hiring was conditioned upon successful completion of the physical and the interview, which required her providing his genetic information to Defendant and the provider.

42. Mr. Wells was hired by Defendant as a Forklift Operator after completing all required steps in the hiring process. Mr. Wells was employed by Defendant at the University Park Facility from on or about January 15, 2021 through on or about June 15, 2022.

### **DEFENDANT VIOLATES GIPA AS A MATTER OF COURSE**

43. Based on Plaintiff's experiences, he believes that, during the hiring process, Defendant asks employees and/or prospective employees to provide family medical histories as a condition of employment and/or as part of its hiring process.

44. Plaintiff understands, on information and belief, that Defendant, or agents on its behalf, requests this family medical history information for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

45. On information and belief, Defendant requests this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Defendant believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding.

46. Defendant was or should have been aware of its obligations under GIPA. Nevertheless, Defendant intentionally and/or recklessly captured, collected, and/or retained Plaintiff's genetic information in the form of his family medical history in violation of Illinois law.

47. As a result, Defendant's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

## CLASS ACTION ALLEGATIONS

48. **Proposed Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following class (the "**Class**") of similarly situated individuals, defined as follows:

49. The Class brought by Plaintiff consists of:

> All individuals in Illinois, from the date within five years prior to the filing of this action, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical

11

      history, in connection with the person's application for employment
      or the person's employment with Defendant.

Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

    50.    Plaintiff reserves the right to modify this class definition as they obtain relevant information, including employment records, through discovery.

    51.    **Numerosity:** The exact number of class members is unknown and is not available to Plaintiff at this time, but Defendant employs over 500 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class. It is further believed that there are at least 100 individuals that meet the class definition. Therefore, it is clear that individual joinder in this case is impracticable. Proposed Class members can easily be identified through Defendant's employment records.

    52.    **Common Questions:** There are several questions of law and fact common to the claims of Plaintiff and the proposed Class members, and those questions predominate over any questions that may affect individual proposed Class members. Common questions include, but are not limited to, the following:

      a. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of prospective employees;

      b. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of existing employees;

      c. whether Defendant obtained genetic information from Plaintiff and the Class by asking for family medical history; and

      d. whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA.

53. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class members. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

54. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

55. **Superiority:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if proposed Class members were able or willing to pursue such individual litigation, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**COUNT I**
**VIOLATION OF 410 ILCS 513/25**
**SOLICIT, REQUEST, AND/OR REQUIRE GENETIC INFORMATION OF A PERSON OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR PRE-EMPLOYMENT APPLICATION**

56. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

58. Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

59. Plaintiff was individually asked to provide, and did provide, his family medical history as a condition of employment during the application and hiring process to work for Defendant.

60. Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiff to disclose family medical history as a condition of employment during the application and hiring process to work for Defendant.

61. Defendant indirectly solicited or requested Plaintiff to disclose his family medical history in the form of medical conditions with a genetic predisposition which had manifested in his parents, including cardiac health, cancer, and diabetes, during a pre-employment interview and physical as a condition of employment during the application and hiring process to work for Defendant.

62. Defendant failed to direct Plaintiff, either verbally or in writing, not to provide genetic information when requested to provide his family medical history.

63. Plaintiff and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application.

64. By indirectly or directly soliciting or requesting Plaintiff and the proposed Class members to provide their genetic information as described herein, Defendant violated Plaintiff's

14

and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

65. Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA, its actions in violating GIPA were willful.

66. On behalf of themselves and the proposed Class members, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff, individually and on behalf of the proposed Class of similarly situated individuals, prays for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil Procedure 23 and certifying the proposed Class as defined herein;

B. Designating and appointing Plaintiff as representative of the proposed Class and Plaintiff's undersigned counsel as Class Counsel;

C. Declaring that Defendant's actions, as set forth above, violate GIPA;

D. Awarding Plaintiff and the proposed Class members statutory damages of $15,000 or actual damages, whichever is greater, for *each* intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2), or statutory damages of $2,500

15

        or actual damages, whichever is greater, for *each* negligent violation of GIPA pursuant to 410 ILCS 513/40(1);

E.     Declaring that Defendant's actions, as set forth above, were intentional or reckless and/or declaring that Defendant's actions, as set forth above, were negligent;

F.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Class, including an Order prohibiting Defendant from soliciting, requesting and/or requiring genetic information as a condition of employment or in a pre-employment application pursuant to GIPA;

G.     Awarding Plaintiff and the proposed Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H.     Awarding Plaintiff and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I.     Granting all such other and further relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: December 8, 2023                  Respectfully submitted,

                                                */s/ Edward Wallace*
                                                Edward A. Wallace
                                                Mark R. Miller
                                                Molly C. Wells
                                                WALLACE MILLER
                                                150 N. Wacker Drive, Suite 1100
                                                Chicago, IL 60606
                                                T. (312) 261-6193
                                                E. eaw@wallacemiller.com
                                                  mrm@wallacemiller.com
                                                  mcw@wallacemiller.com
                                                Firm ID: 65958

                                                David J. DiSabato*
                                                Kyle D. McLean (SBN 6344126)
                                                SIRI & GLIMSTAD LLP
                                                745 Fifth Avenue, Suite 500
                                                New York, NY 10151
                                                T. (212) 532-1091

      E. ddisabato@sirillp.com
       kmclean@sirillp.com

*COUNSEL FOR PLAINTIFF AND THE PROPOSED CLASS*

\*(*Pro Hac Vice* To Be Filed)